```
                  IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF ALABAMA
                           SOUTHERN DIVISION

TERESA F. MYLES,                   :
                                   :
     Plaintiff,                    :
                                   :
vs.                                :
                                   :     CIVIL ACTION 14-0293-M
CAROLYN W. COLVIN,                 :
Social Security Commissioner,      :
                                   :
     Defendant.                    :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 12). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 16).  Oral argument was waived in this action (Doc. 19).  Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

1

Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Myles was forty-five years old, had completed a high school education (Tr. 32), and had previous work as a nursery laborer, cashier/checker, packer, correctional officer, and construction worker (Tr. 52-53). In claiming benefits, Plaintiff alleges disability due to peripheral neuropathy, fibromyalgia, headaches, anxiety, depression, and hypertension (Doc. 12 Fact Sheet).

Myles filed applications for disability benefits and SSI on July 11, 2011 and October 20, 2011, respectively (*see* Tr. 12; *see also* Tr. 131-34, 149-57). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although she could not return to her past relevant work, Myles was capable of performing specified light work jobs (Tr. 12-24). Plaintiff requested review of the hearing decision (Tr. 7-8) by the Appeals Council, but it was denied (Tr. 1-4).

Plaintiff claims that the opinion of the ALJ is not

supported by substantial evidence.  Specifically, Myles alleges the single claim that the ALJ did not properly evaluate the conclusions of her treating physician (Doc. 12).  Defendant has responded to—and denies—this claim (Doc. 13).  A summary of the relevant record medical evidence follows.[1]

On December 10, 2010, x-rays of the lumbar spine revealed minimal degenerative spurring in the lower lumbar region (Tr. 420).  On December 28, Plaintiff underwent an MRI of the lumbar spine that was negative (Tr. 293; *see generally* Tr. 283-96).

On March 4, 2011, Dr. Jeffrey D. Faggard, with the IMC Diagnostic & Medical Clinic, examined Myles for complaints of joint pain, worse in her hands, knees, feet, and hips (Tr. 291-92).  Plaintiff reported that Lyrica[2] helped some; she also took Tramadol.[3]  The Doctor noted that she was in no acute distress and had full range of motion (hereinafter *ROM*) in her neck shoulders, elbows, wrists, fingers, hips, knees, ankles, and feet, though there was diffuse tenderness to palpation and ROM;

---

[1] Myles asserts a disability date of July 6, 2011 (Tr. 133; *cf.* Tr. 12); she points to medical records dating as early as December 28, 2010 to support her disability claim (Doc. 12 Fact Sheet).  As such, the Court will review little evidence pre-dating this latter date and will review only that evidence directly relating to her claim herein.

[2] *Lyrica* is used for the management of neuropathic pain.  **Error! Main Document Only.***Physician's Desk Reference* 2517 (62nd ed. 2008).

[3] *Tramadol* "is indicated for the management of moderate to moderately severe chronic pain in adults who require around-the-clock treatment of their pain for an extended period of time."  *Physician's Desk Reference* 2520 (66th ed. 2012).

3

Faggard continued prescriptions for Savella[4] and Ultram[5] and added Robaxin.[6]  On April 5, 2011, the Doctor noted that Myles was doing better and was walking without a cane; Faggard noted full ROM throughout with no tenderness (Tr. 290).  The diagnosis was Fibromyalgia, apparently stable, and mild osteoarthritis.  On July 7, Plaintiff complained of severe pain all over, especially in her legs, and stated that her medicine was not helping; she never started the Robaxin (Tr. 288-89).  The Doctor noted full ROM throughout, though there was diffuse tenderness with ROM; Faggard set her up for physical therapy treatment.

    Myles underwent five sessions of physical therapy from July 12 through August 8, 2011 at Encore Rehabilitation, Inc. for complaints of low back pain (nine on a ten-point scale) with radicular symptoms, marked stiffness, weakness, and loss of motion and function (Tr. 242-59).  On the first visit, the Therapist, Lundy Foose, noted moderate restrictions on both the left and right, finding the following ROM measurements:  lumbar flexion was 50%, lumbar extension was 75%, and side-bending and rotation was 25%; she noted, however, that "functional ROM was

---

[4]*Savella* is used in the treatment of fibromyalgia.  *See* http://www.drugs.com/savella.html

[5]*Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain."  *Physician's Desk Reference* 2218 (54th ed. 2000).

[6]*Robaxin* "is indicated as an adjunct to rest, physical therapy, and other measures for the relief of discomforts associated with acute, painful musculoskeletal conditions."  *Physician's Desk Reference* 2428 (52nd ed. 1998).

4

observed to be [within normal limits] while pt was sitting, standing, transitioning on the plinth from supine to sitting and while donning shoes" (Tr. 243).  The Therapist also noted that Myles exaggerated her complaints of pain (Tr. 244).  On the second session, July 15, 2011, Foose noted the following:  "Pt was observed to be able to bend completely forward at the waist to pick an object off of the floor without difficulty.  However, when asked to perform AROM of flexion and extension pt self-limits both" (Tr. 250).  On July 25, Plaintiff reported that her pain had decreased to six following the session (Tr. 252).  On August 5, Myles reported that she felt great after her last session and that therapy was helping (Tr. 255).  On August 8, Plaintiff stated that although she was not having a good day, her pain was only five (Tr. 253).

On September 15, Dr. Mark Wiles, with Internal Medicine Center, found Myles in no apparent distress; he noted that there were no motion limitations throughout (Tr. 375-76).

On October 6, Dr. Faggard examined Myles for increased pain in her left shoulder, radiating into the arm; Tylenol helped (Tr. 283-85).  The Doctor noted full ROM throughout; there was no pain in the back with forward flexion, lateral bending, and extension.  An x-ray of the left shoulder was negative.

On November 20, Plaintiff went to the Springhill Medical Center Emergency Room after a fainting spell in which she hit

5

her head; she complained of a throbbing headache and right shoulder and back tenderness (Tr. 307-13). A CT of the head was normal. On examination, Myles had right dorsal shoulder and paravertebral muscle tenderness though she had full passive ROM. The final diagnostic impression was syncope and scalp abrasion, likely triggered by a medication reaction.

   On October 28, 2011, Plaintiff was seen at Mostellar Medical Center to establish medical care; she had had a headache for two weeks and increased pain for the previous couple of days (Tr. 332-33; *see generally* Tr. 314-33). The physical examination was normal. On December 9, Myles was treated for pharyngitis (Tr. 325-26). On April 16, 2012, Plaintiff presented for feet, leg, and back pain; Dr. Elmore Alexander, D.O., diagnosed depression, among other things, and recommended a gluten-free and carbohydrate adjusted diet (Tr. 321-22).

   On May 15, 2012, Dr. Wiles examined Plaintiff for fibromyalgia; the current episode had begun a month earlier and gotten worse (Tr. 302-05). Plaintiff reported that bed rest, NSAID's, Lyrica, and Savella helped. Wiles noted normal ROM throughout except in the left shoulder and left and right upper arm with tenderness in both sets of shoulders, hips, and upper arms as well as her lumbar back. On June 29, 2012, Dr. Faggard, following a phone call from Myles about her pain, called in a

6

prescription for Tylenol #3[7] (Tr. 300).

On July 17, 2012, Myles was seen by Dr. Faggard for complaints of pain all over, staring a month earlier and getting worse (Tr. 372-74).  On examination, the Doctor found tenderness in the right and left shoulder, right and left hip, right and left knee, and both arms; he found ROM to be full throughout.  Faggard continued her medications and told her to return in six months.  On that same date, Faggard completed a Pain Form in which he indicated that he had been treating Myles for sixteen months for fibromyalgia (Tr. 334-35).  The Doctor stated that Plaintiff had pain that would distract her from performing her daily activities, that physical activity would greatly increase her pain, causing distraction from—or total abandonment of—her task, and that either the pain, or the medications she took for it, would limit her ability to work.  Faggard restricted Myles from bending, squatting, and climbing; he further indicated that Plaintiff could not engage in regular, productive work as she would miss more than two days per month because of her impairment.  This concludes the relevant evidence of record.

Myles alleges the single claim that the ALJ did not properly evaluate the conclusions of her treating physician, Dr. Faggard (Doc. 12).  It should be noted that "although the

---

[7] **Error! Main Document Only.** *Tylenol* with codeine is used "for the relief of mild to moderately severe pain." *Physician's Desk Reference* 2061-62 (52nd ed. 1998).

opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[8] *see also* 20 C.F.R. § 404.1527 (2014).

In the determination, the ALJ summarized the medical evidence and then explained what weight the evidence was given. No weight was given to the pain form completed by Dr. Faggard as it was inconsistent with his own treatment records; the ALJ specifically pointed out that his own records demonstrated no joint swelling and normal ROM findings in the May and July 2012 notes (Tr. 21).  The ALJ further pointed out that Myles had indicated to her doctors that her medications helped with her fibromyalgia pain and that she had never reported back to Faggard in advance of her scheduled appointments because of her pain (Tr. 21).  The ALJ noted that the Physical Therapist's records were inconsistent with Dr. Faggard's limitations. Finally, the ALJ pointed out that the Doctor did not "identify specifically the tender or trigger points as referenced in SSR 12-2P" (Tr. 19).

---

[8]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

The Court finds substantial support for the ALJ's rejection of Dr. Faggard's opinions in his Pain Form.  It is of no moment that the Doctor is a specialist as his opinions are unsupported in his own medical records, much less the record as a whole.  While the Court is sympathetic to Myles's argument that she did not see her physician more often or get more physical therapy treatment because of her poor finances, the objective medical evidence does not support Dr. Faggard's conclusions.  The only evidence providing support for those conclusions is Plaintiff's own testimony; however, the ALJ rejected the credibility of that testimony as unsupported by the evidence (Tr. 18, 19), a finding unchallenged in this action.  Myles's claim is without merit.

Plaintiff has raised a single claim in this action.  It is without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 2nd day of February, 2015.

<pre>                                   s/BERT W. MILLING, JR.
                                   UNITED STATES MAGISTRATE JUDGE</pre>